IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-20033-JAR |
| JEFFREY P. WILSON, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Jeffrey P. Wilson's *pro se* Motion for

Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 45).[1]  Wilson also requests

appointment of counsel to assist with his motion.  The motion is fully briefed, and the Court is

prepared to rule.  For the reasons provided below, the Court denies his motion and his request for

appointment of counsel.

## I.     Background

In November 2019, Wilson pleaded guilty to wire fraud.[2]  On June 7, 2021, the Court

sentenced him to a 33-month term of imprisonment, followed by a two-year term of supervised

release, and ordered him to pay $293,318.00 in restitution to seven different victims.[3]  Wilson is

39 years old, and his projected release date is February 23, 2023.[4]

---

[1] Because Wilson appears *pro se*, the Court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the Court will not act as his advocate.  *Id.*

[2] Doc. 19.

[3] Docs. 39, 41.  The Court stayed the imposition of his sentence for 45 days.  *See* Docs. 39, 41.

[4] *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for BOP Register Number 20792-031) (last visited Dec. 20, 2021).

Wilson filed this *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on two grounds.  First, he argues that he is the only immediate family member available to care for his mother, who has stage four pancreatic cancer and, about eight months ago, was told that she had 12–24 months left to live.  Second, Wilson contends that his obesity and history of substance abuse place him at a heightened risk for severe illness should he contract COVID-19 while in prison.  Wilson asks the Court to reduce his sentence to time served.  He also proposes that the Court extend his two-year term of supervised release to three years and require that he serve the length of the remainder of his sentence on home detention.  If released, Wilson proposes to live with his wife and their two minor children.  The government filed a response brief opposing the motion,[5] to which Wilson replied.[6]

Wilson is incarcerated at FPC Yankton in South Dakota.  As of December 20, 2021, the Bureau of Prisons ("BOP") reports that there are no active inmate or staff cases of COVID-19 at this facility.[7]  The BOP further reports that 361 inmates and 91 staff members at FPC Yankton have been fully vaccinated against COVID-19.[8]  Wilson himself is fully vaccinated—he received the first dose of the Pfizer-BioNTech COVID-19 vaccine on April 1, 2021, and the second dose on April 22, 2021.[9]

---

[5] Doc. 49.

[6] Doc. 50.

[7] *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 20, 2021).

[8] *Id.*

[9] Doc. 49 at 9.

## II.       Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once

it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions."[10]  "One

such exception is contained in [18 U.S.C.] § 3582(c)(1)."[11]  Section 3582(c)(1)(A), as amended

by the First Step Act of 2018,[12] permits a court to reduce a term of imprisonment "upon motion

of the defendant after the defendant has fully exhausted all administrative rights to appeal a

failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Before

reducing a term of imprisonment, a court must find that (1) "extraordinary and compelling

reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy

statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set

forth in 18 U.S.C. § 3553(a) support such a reduction.[13]  The court may deny a § 3582(c)(1)(A)

motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not

need to address the others."[14]

## III.      Discussion

### A.       Exhaustion

Section 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that the

government may waive or forfeit.[15]  Here, the government does not contest that Wilson has met

---

[10] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[11] *Id.*

[12] Pub. L. No. 115-391, 132 Stat. 5194.

[13] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[14] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[15] *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

the exhaustion requirement.  The Court thus considers this argument waived and proceeds to the

merits.

### B.       Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling

reasons warrant a sentence reduction" before it may grant a § 3582(c)(1)(A) motion.  The court

has "the authority to determine for [itself] what constitutes 'extraordinary and compelling

reasons.'"[16]  While that authority "is bounded by the requirement . . . that a reduction in sentence

be consistent with applicable policy statements issued by the Sentencing Commission," the

Sentencing Commission has not yet issued a policy statement "applicable" to § 3582(c)(1)(A)

motions filed by a defendant.[17]  Thus, § 3582(c)(1)(A)'s consistency requirement does not

currently constrain the court's discretion to consider whether extraordinary and compelling

reasons warrant a sentence reduction.[18]

Wilson presents two reasons that he contends are extraordinary and compelling such that

they warrant a reduction of his sentence: his family circumstances and his risk for severe illness

should he contract COVID-19 in prison.  The Court addresses them both below, in turn.

### 1.       Family Circumstances

Wilson claims that extraordinary and compelling reasons for a sentence reduction exist

because he is the only available caregiver for his mother, who is terminally ill with stage four

pancreatic cancer and "requires continual care."[19]  Wilson asserts that his father "is trying his

best to care for her," but he has some health issues of his own and "is getting to an age where his

---

[16] *Maumau*, 993 F.3d at 832.

[17] *Id.* at 832, 836–37.

[18] *Id.* at 837.

[19] Doc. 45-3 at 1.

mind, specifically his memory, is starting to slip."[20]  Wilson has submitted a letter from his father's physician opining that his father's "overall health will limit his ability to provide care for his wife without assistance from other family members."[21]  The physician states that Wilson's father has type 2 diabetes mellitus, hypertension, hypercholesterolemia, obstructive sleep apnea, and coronary artery disease.[22]

Wilson has a sister, but he explains that she has a Chiari malformation, which is a protrusion of the brain into the spinal canal.  This causes frequent, severe migraines and prevents her from lifting or pushing any amount of weight that causes her to strain.  She also has a job and a family of her own.  Wilson has submitted a letter from his sister describing her Chiari malformation, along with her most recent MRI results confirming her diagnosis.[23]

While the Court does not doubt that Wilson's incarceration is difficult for his family, the situation he describes does not rise to the level of extraordinary and compelling circumstances that would justify a sentence reduction.  To be sure, Wilson's father and sister both have health issues that limit their ability to provide care for his mother without assistance.  But Wilson fails to show that these two family members, along with his wife, cannot provide care, or that there is no other reasonable option but for him to care for his mother.  Because Wilson has not demonstrated that he is the only available caregiver for his mother, his family circumstances, while difficult, do not present an extraordinary and compelling reason for a sentence reduction.

---

[20] *Id.*

[21] Doc. 50-1 at 1.

[22] *Id.*

[23] *Id.* at 2–3.

##### 2.      Risk of COVID-19

Wilson also asserts that he has established extraordinary and compelling reasons for a

sentence reduction because his obesity and history of substance abuse increase his risk for severe

illness should he contract COVID-19 in prison.  Wilson's medical records confirm that he is

obese and suffers from alcohol and opioid use disorders.[24]  The government concedes that under

the Centers for Disease Control and Prevention ("CDC") guidance, Wilson's medical conditions

increase the risk for severe illness from COVID-19.[25]  But the government argues that Wilson's

vaccination status mitigates his risk such that his medical conditions do not present an

extraordinary and compelling reason for a sentence reduction.  The Court agrees.

The CDC has explained that mRNA COVID-19 vaccines, including the Pfizer-BioNTech

COVID-19 vaccine Wilson received, "reduc[e] the risk of COVID-19, including severe illness

by 90 percent or more among people who are fully vaccinated."[26]  The vaccines "have been

shown to provide protection against severe illness and hospitalization among people of all ages

eligible to receive them," including those "who are at higher risk of severe outcomes from

COVID-19."[27]  The information available to the Court thus shows that Wilson is inoculated with

a vaccine that is safe and highly effective at preventing severe cases of COVID-19, even among

people with underlying medical conditions.[28]  And Wilson has provided no evidence or

persuasive argument suggesting that, despite vaccination, he remains at an increased risk for

---

[24] Doc. 49 at 14.

[25] *See Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 14, 2021).

[26] *COVID-19 Vaccines Work*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated Nov. 9, 2021).

[27] *Id.*

[28] *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order."); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (same).

severe illness should he contract COVID-19 at FPC Yankton,[29] which currently has no reported

active cases of COVID-19 among either inmates or staff members.[30]

Given Wilson's vaccination status and the low number of COVID-19 cases at his facility,

the Court concludes that his medical conditions and the possibility of a COVID-19 infection do

not amount to extraordinary and compelling reasons for a sentence reduction under

§ 3582(c)(1)(A).

### C.      Section 3553(a) Factors

Even if Wilson could show that extraordinary and compelling reasons exist, the

applicable 18 U.S.C. § 3553(a) factors counsel against his release at this time.  Those factors

include: (1) "the nature and circumstances of the offense and the history and characteristics of

the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the

need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the

need for the sentence imposed . . . to protect the public from further crimes of the defendant";

and (5) "the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct."[31]

The nature and circumstances of the offense are serious.  This case arose when the

Internet Crime Complaint Center received a call from a victim reporting that he had been

---

[29] *See United States v. Gomez-Vega*, No. 19-1382-1, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that [the defendant's] conditions constitute extraordinary and compelling reasons for compassionate release."); *see also Broadfield*, 5 F.4th at 803 ("A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.").

[30] *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 20, 2021).

[31] 18 U.S.C. § 3553(a).

scammed out of $120,000.[32]  The victim told authorities that he responded to an advertisement posted on Craigslist offering to sell an e-pharmacy business purportedly located in India.[33] Throughout the investigation, the FBI located eight additional victims.[34]  It turns out Wilson had placed multiple of these advertisements on Craigslist, each offering to sell an e-pharmacy business, targeting different locations across the United States.[35]  The advertisements claimed that no inventory was needed to run the business and that the medications were provided by a fulfillment company at wholesale pricing.[36]  Wilson received 211 inquiries from interested buyers.[37]  And he provided what he claimed were Great Southern Bank records of a company he owned, "Wilson International LLC," to some of the potential buyers.[38]  But those records were false; no such account existed.[39]

     Wilson collected $419,950 from his victims.[40]  In an effort to avoid detection after a few victims learned of the scam, he returned some of the money.  Still, in total, the victims incurred a net loss of $293,318.[41]  The government notified the victims of Wilson's motion for compassionate release.  Unsurprisingly, the government received letters from several victims—to whom Wilson still owes substantial restitution—expressing their opposition to Wilson's motion.[42]

---

[32] Doc. 23 ¶ 11.

[33] *Id.*

[34] *Id.*

[35] *Id.* ¶ 13.

[36] *Id.*

[37] *Id.* ¶ 14.

[38] *Id.* ¶ 15.

[39] *Id.*

[40] *Id.* ¶ 74.

[41] *Id.*

[42] *See* Doc. 49 at 22–23.

This was not Wilson's first financial crime.  In 2010, he was convicted of theft in state court.[43]  In that case, he used his computer to sell two counterfeit Rolex watches and a MacBook Pro laptop.[44]  Later that same year, Wilson was convicted of wire fraud in federal court after he "fraudulently represented, on various internet sites, [that] he had certain items to sell, when in fact he did not have such items for sale and did not arrange to obtain such items for sale.  At least 13 victims suffered an actual loss of $173,041."[45]

Finally, while on bond in the instant case, Wilson violated the conditions of his pre-trial release by advertising a truck cover business, which he called "Gorilla Truck Covers," on a Facebook page.[46]  The U.S. Probation Office detected this while monitoring his internet activity.[47]  By violating his conditions of pre-trial release by again advertising products for sale over the Internet, Wilson demonstrated that he has little respect for the law.  Since his incarceration, Wilson says that he has remained "very active in [his] programming and rehabilitation efforts."[48]  He states that he is enrolled in the RDAP program, has completed ACE classes, teaches a resume writing class, and tutors inmates who are studying for their GED. Wilson recognizes, however, that he has "been [t]here a relatively short amount of time."[49] Indeed, Wilson has served less than six months of the 33-month sentence this Court imposed.

Given the seriousness of Wilson's offense and his history of committing fraud, the Court concludes that reducing Wilson's sentence to time served would result in a sentence that no

---

[43] Doc. 23 ¶ 93.

[44] *Id.*

[45] *Id.* ¶ 94.

[46] *Id.* ¶ 7.

[47] *Id.*

[48] Doc. 50 at 2.

[49] *Id.*

longer reflects the serious nature of his offense, promotes respect for the law, affords adequate

deterrence, protects the public, or provides just punishment.  And extending Wilson's term of

supervised release from two to three years, as he proposes, would not turn a time-served sentence

into one that satisfies the sentencing goals set forth in § 3553(a), even if he were required to

serve most of that term under the condition of home detention.  The Court concludes that the

sentence originally imposed remains sufficient, but not greater than necessary, to comply with

the purposes of § 3553(a).  Wilson's motion is denied.

### D.      Request for Appointed Counsel

Wilson has also requested appointment of counsel to assist with his motion.  While there

is no constitutional or statutory right to counsel in the prosecution of a post-conviction motion,[50]

courts have broad discretion to appoint counsel for indigents.[51]  In determining whether to

appoint counsel, the Court considers several factors, including "the merits of the litigant's

claims, the nature of the factual issues raised in the claims, the litigant's ability to present his

claims, and the complexity of the legal issues raised by the claims."[52]  As explained above,

Wilson's motion fails to present a colorable claim for compassionate release.  His motion also is

not legally or factually complex, and he has adequately presented his arguments for relief.  Thus,

appointment of counsel is not warranted.

The Court also notes that it has already enabled the Federal Public Defender to enter an

appearance on Wilson's behalf.[53]  The Federal Public Defender's Office has notified the Court

---

[50] *See Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008) ("There is no constitutional right to counsel beyond the direct appeal of a criminal conviction . . . ."); *see also United States v. Campos*, 630 F. App'x 813, 816 (10th Cir. 2015) ("No right to counsel extends to a § 3582(c)(2) motion.").

[51] *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

[52] *Id.*

[53] *See* D. Kan. S.O. 2020-8.

that it reviewed Wilson's motion and decided not to enter an appearance.  Wilson's request for appointed counsel is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Jeffrey P. Wilson's Motion for Compassionate Release (Doc. 45) is **denied**.  His request for appointment of counsel is also **denied**.

**IT IS SO ORDERED.**

Dated: December 21, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE